UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 11

INNATECH, LLC,  Case No. 10-49380

          Debtor.          /  Hon. Thomas J. Tucker

**AMENDED INTERIM ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS; AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO BRIDGE HEALTHCARE FINANCE, LLC**

This matter came before this Court on the motion (Docket # 5, the "Motion") of Innatech, LLC, a Michigan limited liability company ("Debtor") requesting that this Court enter an order authorizing Debtor to: (a) use certain Cash Collateral on an emergency basis; and (b) grant adequate protection and provide security and other relief to Bridge Healthcare Finance, LLC, in its capacity as agent and sole lender under the Prepetition Documents ("Agent"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a preliminary hearing on March 26, 2010 pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or overruled by the Court, and the Court having entered an interim order on March 26, 2010 (Docket # 35) and having reviewed the stipulation filed on April 2, 2010 to the entry of an amended interim order, the Court now enters this amended interim order. **THE MOTION IS GRANTED, to the extent of the Court entering this Amended Interim Order, AND THE COURT FINDS THAT:**

    A.    On the Filing Date, Debtor filed a voluntary petition for relief under chapter 11 of the Code. Debtor has retained possession of its property and continues to operate its business as debtor in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. On March 31, 2010, a Committee was appointed in this Case.

D. Subject to Paragraph 6 of this Order, Debtor admits, stipulates and agrees that:

    1. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtor and Agent;

    2. the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents;

    3. as of the Filing Date, Debtor is liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $6,800,000, exclusive of accrued and accruing Allowable 506(b) Amounts;

    4. no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, re-characterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

    5. the Prepetition Liens are First Priority Liens, subject to Permitted Liens and secure payment of all of the Prepetition Debt;

    6. upon the entry of this Order, Agent's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Prepetition Collateral was not less than $7,500,000; <u>provided</u>, <u>however</u>, that nothing herein shall prejudice

Agent's right to later: (1) assert that its interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

7. Debtor does not have any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or otherwise, against the Agent or its affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E. Agent has consented to the terms of this Order and is entitled to the protections afforded a party acting in "good faith" under Code § 363(m), and adequate protection as set forth herein pursuant to Code §§ 361, 362, and 363 for any decrease in the value of its interests in the Prepetition Collateral from and after the Filing Date. Notwithstanding Agent's consent to the entry of this Order, Agent shall be deemed to be diligently pursuing its rights and remedies against Debtor.

F. Debtor needs to use Cash Collateral as provided herein through the Termination Date, in order to prevent immediate and irreparable harm to the estate and minimize disruption to and avoid the termination of its business operations. Entry of this Order will also enhance the possibility of a successful reorganization and maximizing the value of the Debtor's assets.

G. The terms of this Order have been negotiated at arm's length and in good faith.

H. Under the circumstances of the Case, this Order is a fair and reasonable response to Debtor's request for Agent's consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtor's estate and its creditors.

I. The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and 9014 and Code §§ 102(1) and 363, and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS ORDERED THAT THE MOTION IS GRANTED, to the extent of the entry of this Amended Interim Order, AND THAT:**

1. <u>Authorization to Use Cash Collateral</u>.  Debtor is authorized to use Cash Collateral through the Termination Date solely: (a) in accordance with the terms and provisions of this Order; (b) to the extent required to pay when due those expenses enumerated in the Budget (subject to the Permitted Variance) and to pay Allowable 506(b) Amounts; and (c) subject to the Performance Covenants.

2. <u>Procedure for Use of Cash Collateral</u>.

   (a) <u>Delivery of Cash Collateral to Agent</u>.  Debtor shall deposit all Cash Collateral now or hereafter in its possession or control into the Lockbox & Blocked Account (or otherwise deliver such Cash Collateral to Agent in a manner satisfactory to Agent) promptly upon receipt thereof.

   (b) <u>Cash Collateral in Agent's Possession</u>.  Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof.

   (c) <u>Application of Cash Collateral</u>.  With respect to all Cash Collateral now or hereafter in Agent's possession or control, Agent shall: (1) first, remit such amounts to Debtor to pay expenses in accordance with Paragraph 1 above; (2) second, provisionally apply such amounts to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (3) third, provisionally apply such amounts to other Prepetition Debt.  All such applications to Prepetition Debt shall be subject to the right of parties in interest to seek a determination in accordance with Paragraph 6 below that such applications to Prepetition Debt resulted in the payment of any unsecured prepetition claim of Agent, and to seek disgorgement of such payments and/or other appropriate relief.

   (d) <u>Prohibition Against Other Use of Cash Collateral</u>.  Through the Termination Date, and except as provided for in this Order, Debtor shall be prohibited from seeking to use Cash Collateral unless, in addition to the satisfaction of all requirements of Code § 363 as applicable, Agent has consented to such order.

3. <u>Adequate Protection of Interests of Agent in the Prepetition Collateral and the Prepetition Liens</u>. Agent has consented to the terms of this Order and is entitled to the protections afforded a party acting in "good faith" under Code § 363(m) and adequate protection as set forth herein and to the extent required under Code §§ 361, 362, or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a) <u>Priority of Prepetition Liens/Allowance of Agent's Claim</u>. Subject to the terms of Paragraph 6 of this Order: (1) the Prepetition Liens shall constitute First Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Agent's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $6,800,000 exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) <u>Replacement Liens</u>. Agent is hereby granted the Replacement Liens as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtor or Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases. Notwithstanding the foregoing, Debtor is authorized to and shall execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may request from time to time in respect of the Replacement Liens.

(c) <u>Allowed Code § 507(b) Claim</u>. If and only to the extent the adequate protection of the interests of Agent in the Prepetition Collateral granted pursuant to this Order proves insufficient, Agent shall have an allowed claim under Code § 507(b) in the amount

of any such insufficiency, with such claim priority over the claims of any other party in interest under Code § 507(b).

(d) <u>Reaffirmation of Guaranty</u>. The Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agent pursuant to Code § 363. Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, including, without limitation, all Prepetition Debt secured by Replacement Liens. At Agent's request, Guarantor shall execute a reaffirmation of his obligations under the Guaranty and recognition of the foregoing.

4. <u>Termination Date; Rights and Remedies</u>.

(a) <u>Effect of Termination Date</u>. Upon the Termination Date, without further notice or order of Court: (1) Debtor's authorization to use Cash Collateral hereunder will automatically terminate; (2) Debtor shall be prohibited from using Cash Collateral for any purpose other than application to the Prepetition Debt; and (3) subject to Paragraph 6 of this Order, Agent shall be entitled to apply any Cash Collateral coming into its possession or control to the Prepetition Debt, <u>provided</u>, that any Cash Collateral received by Agent during the three (3) business day period after the Termination Date may be subject to any further request by Debtor to use Cash Collateral.

(b) <u>Access to Collateral</u>. Upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, Agent may enter upon such leased premises (provided Agent has at that time relief from the automatic stay to exercise its rights with respect to such Prepetition Collateral) for the purpose of exercising any right or remedy with respect to the Prepetition Collateral located thereon and shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord; <u>provided</u> that Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Agent, calculated on a per diem basis, unless an agreement between Agent and such landlord provides otherwise.

5. <u>No Surcharge</u>.  In the exercise of their business judgment, with respect to expenses or other liabilities incurred by Debtor through the Termination Date, Debtor (and any subsequent Trustee) hereby agrees that there shall be no surcharge of the Prepetition Collateral for any purpose, unless agreed to by Agent.  Further, Debtor represents that the Budget contains all expenses that are reasonable and necessary for the operation of its business and the preservation of the Aggregate Collateral through the Termination Date, and therefore includes all items potentially chargeable to Agent under Code § 506(c) for such period.  Therefore, Debtor (and any subsequent Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Agent or the Aggregate Collateral on account of expenses or other liabilities incurred by Debtor through the Termination Date.  In reliance on the foregoing, Agent has agreed to the entry of this Order.

6. <u>Reservation of Rights; Bar of Challenges and Claims</u>.  The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtor receives notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) <u>Challenge Procedure</u>.  During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtor during the Investigation Period of its demand that Debtor initiate an action or adversary proceeding relating thereto and from the date that Debtor is so notified, Debtor shall have five (5) days to notify the Challenge Party of whether Debtor intends to initiate such action and ten (10) days to initiate such action, and if Debtor timely initiates such action, Debtor will not be bound by the stipulations contained in Paragraph D of this Order to the extent they conflict with such Challenge.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.  Debtor, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of its business judgment and subject to any applicable further order of court.

(b)     Bar of Challenges and Claims.  If (i) Debtor does not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Agent or for cause shown by an order of this Court), (ii) if no Challenge Party seeks standing to initiate an action within 10 days after the deadline for the Debtor to have initiated such action pursuant to Paragraph 6(a) above, or (iii) the motion(s) of any Challenge Parties seeking standing to initiate an action are denied by the Court, and without further order of the Court, (1) the claims, liens and security interests of the Agent shall be deemed to be allowed for all purposes in the Case and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) Debtor and its estate shall be deemed to have waived, released and discharged Agent and its respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.  If the Debtor or one or more Challenge Parties initiate(s) an action in accordance with the foregoing, and the case is subsequently converted to a chapter 7 case, the chapter 7 trustee shall succeed to the rights of the Debtor and/or Challenge Party to pursue such action.

7.     Waiver of Right to Return/Consent to Setoff.  Debtor hereby waives its right (a) to return any of the Aggregate Collateral pursuant to Code § 546(h), or (b) to consent to a setoff against or with respect to the Aggregate Collateral without the written consent of Agent.

8.     Force and Effect of Prepetition Documents.  Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents (including, without limitation, the reimbursement and indemnification provisions thereof) shall remain in full force and effect with respect to the Prepetition Debt.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

9.     No Marshaling.  Neither Agent, nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

10. <u>Modification of Stay</u>. The automatic stay of Code § 362 is hereby modified with respect to Agent to the extent necessary to effectuate the provisions of this Order, including, without limitation, such actions permitted to be taken by Agent in accordance with the Performance Covenants.

11. <u>No Waiver</u>. Agent shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent and directed to Debtor. No failure of Agent to require strict performance by Debtor (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agent thereafter to demand strict compliance and performance therewith, and no delay on the part of Agent in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Agent of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to later assert: (1) that, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 361, 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

12. "<u>Responsible Person</u>." By taking any actions pursuant to this Order, Agent shall not: (a) be deemed to be in control of the operations or liquidation of Debtor; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtor.

13. <u>Amendments</u>. Debtor and Agent may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; <u>provided</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

14. <u>Proof of Claim</u>.  Agent may, but shall not be required to, file a proof of claim with respect to any of the Prepetition Debt, and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof.

15. <u>Binding Effect</u>.  Except as provided in Paragraph 6 herein, this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing.  If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 6 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Agent shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.  Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

16. <u>Survival</u>.  The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Case in this Court.  The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

17. <u>Notice</u>.  Within 24 hours after entry of this amended interim Order, the Debtor must serve by overnight or electronic mail a copy of this amended interim Order upon the

following: (i) counsel for Agent; (ii) the United States Trustee for the Eastern District of Michigan; (iii) all known secured creditors, (iv) counsel for the Committee and, if counsel for the Committee has not been selected, upon the individual members of the Committee, (v) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (vi) any parties who have requested notice pursuant to Bankruptcy Rule 2002. In addition, the Debtor must promptly serve the Motion and this amended interim Order by first class U.S. mail upon those parties that hereafter request notice pursuant to Bankruptcy Rule 2002.

18. <u>Objections and Final Hearing</u>. Any objection to the continued effectiveness of this amended interim Order or to a final order under similar terms to those terms set forth herein must be in writing and must be filed with the Court on or before April 13, 2010, except that an Official Committee of Unsecured Creditors may file objections within 14 days after it is served with a copy of this amended interim Order. If no objections are timely filed and served, this Interim Order may become a final order. If objections are timely filed and served, a final hearing on the Motion will be held on **April 14, 2010 at 11:00 a.m.(ET)**, in the Courtroom of Judge Thomas J. Tucker, 19th Floor, 211 West Fort Street, Detroit, Michigan 48226, as the same may be continued or adjourned by the Bankruptcy Court.

**Signed on April 2, 2010**                              **/s/ Thomas J. Tucker**
                                                         **Thomas J. Tucker**
                                                         **United States Bankruptcy Judge**

**EXHIBIT A**

**DEFINED TERMS**

1.  ***Aggregate Collateral***.  Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.  ***Allowable 506(b) Amounts***.  Accruing on or after the Filing Date, interest at the default rate of interest as set calculated in accordance with Section 4(a)(iii) of the Prepetition Loan Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including, without limitation, any such fees, costs and expenses at any time incurred by Agent in connection with: (a) the negotiation, preparation, submission, and enforcement of this Order and any other order or document related hereto, and (b) the representation of Agent in the Case, including in defending any Challenge.

3.  ***Budget***.  The budget attached to the Stipulation to Entry of this amended Interim Order (Docket # 55) as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Agent.

4.  ***Case***.  This chapter 11 case or any superseding chapter 7 case of Debtor.

5.  ***Cash Collateral***.  All "cash collateral," as that term is defined in Code § 363(a), in which Agent has an interest, all deposits subject to setoff rights in favor of Agent, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

6.  ***Challenge***.  A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Agent, which Debtor, the Committee, or any Trustee may bring in accordance with Paragraph 6 of this Order.

7.  ***Challenge Party***.  The Committee or any Trustee.

8.  ***Code***.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

9.  ***Committee***.  Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

10.  ***Event of Default***.  At Agent's election: (a) the occurrence and continuance of any Event of Default first arising after the Filing Date under the Prepetition Loan Agreement, other than Events of Default arising as a result of Debtor's breach of the covenants,

representations or warranties contained in sections 11(a) (solely with respect to the representation of no material adverse change), 11(g) (solely as a result of this Case), 14(a), 14(b) and 14(c) of the Prepetition Loan Agreement; (b) Debtor's failure to comply with the covenants (including, without limitation, the Performance Covenants) or perform any of their obligations in strict accordance with the terms of this Order; (c) Debtor, without the consent of Agent, seeks the use of Cash Collateral other than in accordance with the terms of this Order, seeks to conduct a Code § 363 sale on terms unacceptable to Agent, or files a chapter 11 plan that is not acceptable to Agent; (d) Debtor, without the consent of Agent, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or Replacement Liens or which is given superpriority administrative expense status under Code § 364(c) other than in accordance with the terms of this Order; (e) entry of any order authorizing any party in interest to reclaim any of the Aggregate Collateral, granting any party in interest relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtor turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (f) any material representation or warranty made by Debtor in any certificate, report or financial statement delivered to Agent is, after the Filing Date, discovered or disclosed to Agent to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (g) the Case is converted to a case under chapter 7 of the Code; (h) a Trustee is appointed or elected in the Case, or an examiner with the power to operate Debtor's businesses is appointed in the Case; (i) commencement of an adversary proceeding or contested matter objecting to the extent, validity or priority of the Prepetition Debt and/or the Prepetition Liens; or (j) this Order, the Final Order or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by Agent.

11. ***Filing Date***. March 23, 2010.

12. ***Final Hearing***. The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

13. ***Final Order***. A final order authorizing Debtor to use Cash Collateral and entered at or in connection with a Final Hearing.

14. ***First Priority Liens***. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

15. ***Guarantor***. Mr. Willard McCardell.

16. ***Guaranty***. That certain Continuing Unconditional Guaranty, executed by Guarantor in favor of Agent, dated April 1, 2008.

17. ***Investigation Period***. The period from the Filing Date through May 31, 2010.

18. ***Lockbox & Blocked Account.*** Collectively, the following Post Office Box and deposit account: (a) P.O. Box 39685, Chicago, IL 60694-9685; (b) Bank: Harris Bank, NA, ABA Routing Number: 071000288, Account: Innatech LLC, Account Number 2999548.

19. ***Obligations.*** The "Obligations", as that term is defined in the Prepetition Loan Agreement.

20. ***Performance Covenants***. (a) Determined as of each Friday after the Filing Date, Debtor shall maintain Positive Availability equal to or excess of $0 after taking into account all Cash Collateral remitted by Agent to Debtor through such determination; (b) on or before April 8, 2010, Debtor shall have received not less than $200,000 of cash on terms and of a priority acceptable to Agent that is immediately available for use to pay, and shall only be used to pay, expenses in the Budget; (c) on or before April 7, 2010, Debtor shall deliver to Agent written commitments, in form and substance reasonably acceptable to agent, from one or more of its customers that confirm not less than $425,000 of prepetition accounts receivable that are not regularly scheduled to be paid prior to April 15, 2010, shall be paid on or prior to such date without offset, recoupment, deduction or counterclaim of any kind; (d) on or before April 15, 2010, Debtor shall actually receive such expedited payment of accounts; (e) promptly upon Agent's request from time to time, Debtor shall provide Agent access to and information regarding all written, oral, and electronic communications with its vendors and customers, as well as access to Debtor's personnel and professionals with knowledge of such matters; (f) on or before April 7, 2010, Debtor shall deliver to each of account debtor of Debtor (to the extent it owed more than $100,000 of gross accounts as of the date of this Order) a statement, in form and substance acceptable to Agent, regarding the net amount owed to Debtor according to Debtor's books and records; (g) at Agent's request, Debtor shall cooperate with Agent to conduct prompt, jointly participated, good faith, and continuing communications with Debtor's largest customer (and any of its affiliates) regarding matters affecting the value of Agent's interests in the Aggregate Collateral and otherwise related to the going-forward administration of Debtor's estate; (h) if Debtor fails to deliver to Agent, on or before April 12, 2010, one or more written commitments, in form and substance reasonably acceptable to Agent, to provide Debtor with sufficient funds to repay in full and in cash, or otherwise repay Agent's interests in the Prepetition Debt in full and in cash, Debtor shall cooperate with Agent to conduct prompt, jointly participated, good faith, and continuing communications with all of Debtor's customers (and any of its affiliates) regarding matters affecting the value of Agent's interests in the Aggregate Collateral and otherwise related to the going-forward administration of Debtor's estate.

21. ***Permitted Priority Liens***. Collectively, liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

22. ***Permitted Variance***. With respect to the Budget, a cumulative amount equal to 10% of the expenses set forth in the Budget.

23. ***Positive Availability.*** The amount equal to the "Revolving Borrowing Base Amount" (as defined in the Loan Agreement, but for the avoidance of doubt calculated so

as (a) to exclude any value for Tooling Inventory, (b) give effect to existing reserves, and (c) include for Debtor's benefit amounts provisionally applied to the Prepetition Debt and cleared funds available to Agent from the Lockbox & Blocked Account), <u>minus</u> the aggregate amount of outstanding Prepetition Debt (exclusive of the outstanding principal amount of the Term Loan from time to time) <u>plus</u> $730,000.

24. ***Postpetition Collateral***. All of the real and personal property of Debtor of any description whatsoever, wherever located and whenever arising or acquired, including, without limitation, all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (<u>excluding</u>, causes of action under Code §§ 544, 547, 548, 549, 550 and 553 and their proceeds), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Loan Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

25. ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the Prepetition Loan Agreement) and all other assets of Debtor subject to Agent's liens and security interests as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

26. ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Loan Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, <u>plus</u> (b) all Allowable 506(b) Amounts.

27. ***Prepetition Documents***. The Prepetition Loan Agreement and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement).

28. ***Prepetition Liens***. Agent's security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

29. ***Prepetition Loan Agreement***. That certain Loan and Security Agreement dated as of April 4, 2008, by and between Debtor and Agent, as amended, modified and supplemented from time to time.

30. ***Prepetition Third Party Documents***. Collectively, Debtor's deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Agent has an interest.

31. ***Replacement Liens***. First Priority Liens in the Postpetition Collateral granted to Agent pursuant to this Order, subject only to the Permitted Priority Liens.

32. ***Termination Date***. At Agent's election, the earliest to occur of: (a) the date on which Agent provides, via facsimile or overnight mail, written notice to counsel for Debtor and counsel for any Committee of the occurrence and continuance of an Event of Default; and (b) April 16, 2010.

33. ***Trustee***.  Any trustee appointed or elected in the Case.